**SO ORDERED: July 28, 2020.**



_____
**James M. Carr**
**United States Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DANNY JOE WELCH, | ) | Case No. 16-07211-JMC-7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| DANNY JOE WELCH, | ) | |
| | ) | |
| Plaintiff and Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 19-50002 |
| | ) | |
| ROSEMARY WELCH, | ) | |
| | ) | |
| Defendant and Counterclaim Plaintiff. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS MATTER came before the Court for a bench trial on March 9, 2020 (the "Trial").[1]

Plaintiff and counterclaim defendant Danny Joe Welch ("Danny") appeared by counsel Carl Paul

---

[1] Concurrently with the Trial, the Court held a hearing on the *Motion to Hold Creditor Rosemary Welch in Contempt for Violation of the Discharge Injunction* filed at Docket No. 45 in the underlying bankruptcy case. Consistent with the Court's decision rendered hereby, the Court will separately issue a hearing notice with respect to such motion for the purpose of considering whether sanctions should be awarded.

Lamb.  Defendant and counterclaim plaintiff Rosemary Welch ("Rosemary") appeared by counsel Jeffrey A. Hokanson.  At the conclusion of the Trial, the Court invited the parties to submit post-trial briefs on the applicability of the *Rooker-Feldman* doctrine and took the matter under advisement.

The Court, having reviewed the evidence presented at the Trial, *Defendant and Counterclaim Plaintiff Rosemary Welch's Post-Trial Brief* filed by Rosemary on April 22, 2020 (Docket No. 23) ("Rosemary's Brief"), *Plaintiff and Counterclaim Defendant Danny Welch's Reply Brief in Opposition to Defendant and Counterclaim Plaintiff Rosemary Welch's Post-Trial Brief* filed by Danny on May 22, 2020 (Docket No. 24), *Defendant and Counterclaim Plaintiff Rosemary Welch's Reply to Plaintiff and Counterclaim Defendant's Post-Trial Brief* filed by Rosemary on May 29, 2020 (Docket No. 25), and the other matters of record in this adversary proceeding; having taken judicial notice of the bankruptcy case dockets in case no. 11-11169-JMC-7A ("Rosemary's 2011 Case"), case no. 16-07211-JMC-7 ("Danny's Case"), and case no. 17-06878-RLM-13 ("Rosemary's 2017 Case"); having heard and considered the presentations and arguments of counsel at the Trial and in their respective briefs; and being otherwise duly advised, now enters the following findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052.

### Findings of Fact

The Court makes the following findings of fact:

1.  Danny and Rosemary were married on May 27, 2000.[2]

---

[2]  Rosemary's Ex. A-7A.

2.  Paragraph 16 of a *Premarital Agreement* dated May 27, 2000 purports to waive any right of alimony between the parties in the event of divorce or dissolution of marriage.[3]

3.  One child was born to the marriage.[4]

4.  A one-sentence document dated April 1, 2002 (the "Contract")[5] purports to show a commitment from Danny to pay the parties' monthly mortgage obligations.

5.  On September 3, 2003, the parties were divorced by a *Decree of Marriage Dissolution* (the "Divorce Decree")[6] entered by the Monroe Circuit Court, the Honorable E. Michael Hoff presiding (the "Divorce Court"), in the cause captioned *In Re the Marriage of Rosemary C. Welch and Danny J. Welch*, cause no. 53C01-0305-DR-00326 (the "Divorce Action").  The Divorce Decree ordered Danny to pay $125 each week in child support.

6.  On May 17, 2004, an *Order Modifying Decree* (the "Modification Order")[7] was entered in the Divorce Action that modified the Divorce Decree to include an obligation for Danny to pay half of the parties' monthly mortgage payments.

7.  On October 25, 2004, an *Order Vacating Payment Order and Money Judgment* (the "Vacating Order")[8] was entered in the Divorce Action to vacate the Modification Order. The Vacating Order provides in relevant part:

> An Order Modifying Decree was issued in this case on May 17, 2004 that required the Respondent, Danny J. Welch, to pay one-half of the monthly mortgage payment to Beneficial Finance. ... The Order Modifying Decree was based upon a written promise [*i.e.*, the Contract] to pay one-half of that monthly

---

[3]  Danny's Ex. 2; Rosemary's Exs. A-1A and A-18A.

[4]  Danny's Ex. 1; Rosemary's Ex. A-1.

[5]  Danny's Exs. 5, 6 and 7; Rosemary's Exs. A-3 and A-5 (several versions of the Contract).

[6]  Danny's Ex. 1; Rosemary's Ex. A-1.

[7]  Rosemary's Brief, Ex. B.

[8]  Danny's Ex. 14; Rosemary's Ex. A-2.

> mortgage payment signed by Danny J. Welch dated April 1, 2002, and submitted to the court by Petitioner Rosemary C. Welch on April 29, 2004. The Court finds that the written promise signed by Danny J. Welch was not signed as a part of the parties' divorce proceedings, and was not intended as a property settlement agreement. The divorce decree should not have been modified to require Respondent to pay one-half of the Petitioner's future mortgage payments. That order is hereby vacated and set aside.

The Vacating Order's reference to a "written promise" refers to the Contract.

8. On December 28, 2004, Rosemary filed a breach of contract action in the Monroe Circuit Court, the Honorable Stephen R. Galvin presiding (the "Plenary Court"), in the cause captioned *Welch v. Welch*, cause no. 53C06-0412-PL-02328 (the "Contract Action"), with respect to Danny's purported failure to comply with the payment terms of the Contract.[9] The transcript of a May 6, 2005 bench trial in the Contract Action shows that the parties testified about the use of proceeds from the mortgage loan and the formation of the Contract. Neither party testified at that trial that the Contract was intended to provide child support.[10]

9. On May 26, 2005, the Plenary Court entered judgment (the "Judgment") in the Contract Action in favor of Rosemary and against Danny.[11] The Judgment reads: "The Court, having taken this cause under advisement, and being duly advised in the premises, NOW FINDS for [Rosemary] and enters judgment against [Danny] in the amount of $59,362.76 together with statutory interest and the costs of this action."

10. Rosemary sought enforcement of the Judgment through proceedings supplemental in the Contract Action until the Contract Action was removed from the active docket on June 1, 2009.[12]

---

[9] Rosemary's Ex. A-7A.

[10] Danny's Ex. 22; Rosemary's Ex. A-8.

[11] Danny's Ex. 12; Rosemary's Ex. A-17.

[12] Danny's Ex. 17.

11.     On September 1, 2011, Rosemary filed a voluntary petition under chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"),[13] commencing Rosemary's 2011 Case. Rosemary's schedules, filed on her behalf by counsel, do not disclose the Judgment as an asset.[14] On December 20, 2012, Rosemary received a general discharge in Rosemary's 2011 Case.[15] The *Chapter 7 Trustee's Final Account and Distribution Report Certification that the Estate Has Been Fully Administered and Application to be Discharged* reflects that $3,579.79 was paid to unsecured creditors holding allowed claims in the total amount of $17,864.36.[16]

12.     On May 28, 2015, Rosemary wrote to the Plenary Court to seek enforcement of the Judgment in the Contract Action.[17]

13.     On September 18, 2016, Danny filed a voluntary petition under chapter 13 of the Bankruptcy Code, commencing Danny's Case. On October 17, 2016, Danny filed Schedule E/F, which lists the Judgment owing to Rosemary in the amount of $59,473.76 as an unsecured debt (the "Debt").[18]

---

[13]     All statutory references herein are to the Bankruptcy Code unless otherwise noted.

[14]     Rosemary's 2011 Case Docket No. 1.

[15]     Rosemary's 2011 Case Docket No. 26.

[16]     Rosemary 2011 Case Docket No. 42.

[17]     Danny's Ex. 17.

[18]     Danny's Case Docket No. 13.

14. On November 7, 2016, Danny's Case was converted to a case under chapter 7 of the Bankruptcy Code.[19] On February 22, 2017, Danny received a general discharge (the "Discharge") in Danny's Case.[20]

15. On April 13, 2017, Rosemary timely filed two proofs of claim in Danny's Case: (a) *Proof of Claim* 7-1, asserting a $142,379.50 unsecured claim based on the Judgment, which Rosemary asserts is for "money advanced in the nature of child support" entitled to priority as a domestic support obligation under § 507(a)(1)(A) or (a)(1)(B); and (b) *Proof of Claim* 8-1, asserting a $28,854.91 unsecured claim, which Rosemary asserts is for "child support" entitled to priority as a domestic support obligation under § 507(a)(1)(A) or (a)(1)(B). With respect to *Proof of Claim* 8-1, the "Remarks" on the claims register state "This claim is separate from and in addition to Claim #7".[21] Neither of these claims was "allowed" or "disallowed" in the underlying bankruptcy case because the chapter 7 trustee did not administer assets for the benefit of creditors that would prompt a review and/or adjudication of the claims filed therein.[22]

16. On September 11, 2017, Rosemary filed a voluntary petition under chapter 13 of the Bankruptcy Code, commencing Rosemary's 2017 Case. Rosemary's schedules, filed on her behalf by counsel, do not disclose the Judgment, but do disclose an apparently unrelated "Pending Personal Injury Suit" of "Unknown" value.[23] On May 14, 2019, Rosemary received a

---

[19] Danny's Case Docket No. 20.

[20] Danny's Case Docket No. 34.

[21] Danny's Case, Claims Register.

[22] Danny's Case Docket No. 38.

[23] Rosemary's 2017 Case Docket No. 1.

general discharge in Rosemary's 2017 Case.[24]  The *Chapter 13 Standing Trustee's Final Report and Account* reflects that all allowed unsecured claims ($787.33) were paid in full.[25]

17.     On October 11, 2017, Danny's Case was closed.[26]

18.     On January 3, 2018, Rosemary again wrote to the Plenary Court to seek enforcement of the Judgment in the Contract Action.[27]

19.     On October 17, 2018, Danny's Case was reopened,[28] and on December 21, 2018, an order of stay was issued in the Contract Action pending further proceedings in Danny's Case.[29]

20.     On January 3, 2019, Danny filed the *Complaint to Determine Dischargeability of a Debt Pursuant to 11 U.S.C. § 523* (Docket No. 1) (the "Complaint"), wherein Danny requests that the Court find that the Debt was discharged by the Discharge.

21.     On February 4, 2019, Rosemary filed the *Counterclaim* (Docket No. 10) (the "Counterclaim"), wherein Rosemary argues that the Debt is excepted from the Discharge pursuant to § 523(a)(5) or § 523(a)(15).  At the Trial, Rosemary advised the Court that she was proceeding only under the theory that the Debt is excepted from the Discharge pursuant to § 523(a)(5).

---

[24]    Rosemary's 2017 Case Docket No. 85.

[25]    Rosemary's 2017 Case Docket No. 78.

[26]    Danny's Case Docket No. 40.

[27]    Danny's Ex. 17.

[28]    Danny's Case Docket No. 42.

[29]    Complaint, Ex. A; Danny's Ex. 17; Rosemary's Brief, Ex. E.

## Conclusions of Law

A.    Any finding of fact above will also be a conclusion of law, and any conclusion of law will also be a finding of fact to support the judgment of the Court.

B.    This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1334 and 157.

C.    This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

D.    Venue is proper in this matter pursuant to 28 U.S.C. §§ 1408 and 1409.

E.    "[E]xceptions to discharge are to be [construed] strictly against a creditor and liberally in favor of the debtor. … However, the underlying policy of the provision exempting [domestic support obligations] from discharge 'favors enforcement of familial support obligations over a "fresh start" for the debtor.' " *Trentadue v. Gay (In re Trentadue)*, 837 F.3d 743, 749 (7th Cir. 2016) (internal citations omitted).

F.    "[A] party seeking to establish an exception to discharge bears the burden of proof." *Kolodziej v. Reines (In re Reines)*, 142 F.3d 970, 973 (7th Cir. 1998) (citation omitted).

G.    "The standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661 (1991).

### *Dischargeability under § 523(a)(5)*

H.    Section 523(a) provides, in relevant part:

> A discharge under section 727 … of this title does not discharge an individual debtor from any debt –
>> …
>> (5) for a domestic support obligation … .

I.    Section 101(14A) defines a "domestic support obligation" ("DSO") as:

> a debt … that is –

      (A)    owed to or recoverable by –
           (i) a spouse, former spouse, or child of the debtor …
      (B)    in the nature of alimony, maintenance, or support ... of such spouse, former spouse, or child of the debtor ... without regard to whether such debt is expressly so designated;
      (C)    established ... by reason of applicable provisions of –
           (i) a separation agreement, divorce decree, or property settlement agreement; [or]
           (ii) an order of a court of record
           ... ; and
      (D)    not assigned ... .

      J.    To resolve this adversary proceeding, the Court must decide whether the Debt is "in the nature of support" as set forth in § 101(14A)(B).

      K.    "Determining whether [a debt] is 'in the nature of … support' is a question of federal bankruptcy law, not state law.  As such, [the court is] 'not bound by the labels attached to the obligation' under state law." *Trentadue*, 837 F.3d at 748 (internal citations omitted).

      L.    To determine the nature of the Debt, the Court will look to the intent of the parties, the Divorce Court and the Plenary Court.[30]  *In re Coil*, 680 F.2d 1170, 1172 (7th Cir. 1982) (citing *In re Woods*, 561 F.2d 27 (7th Cir. 1977)) (discussing the intent inquiry for DSOs in the divorce decree context).  Where, as here, the debt in question was liquidated by a state court judgment, "the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of respondent's debt." *Brown v. Felsen*, 442 U.S. 127, 138-39, 99 S.Ct. 2205, 2213 (1979).  Rather, the Court may look beyond the record of the Contract Action, the Judgment of which liquidated the Debt in its current form, to seek to determine the intent of the parties at the signing of the Contract, when Danny's purported mortgage payment obligation first arose.

---

[30]    Because this Court is determining the dischargeability of the Judgment entered by the Plenary Court as part of the Contract Action rather than a judgment entered by the Divorce Court as part of the Divorce Action, this Court will consider the intent of the Plenary Court in addition to the intent of the Divorce Court.

M.     The Court's inquiry into the parties' intent is not, however, unbounded:  the decision of the Divorce Court is conclusive on the issues decided in the Divorce Action, and the decision of the Plenary Court is conclusive on the issues decided in the Contract Action.

> The *Rooker-Feldman* doctrine prevents lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced.  It ensures that lower federal courts do not exercise appellate authority over state courts.  …  But even federal claims that were not raised in state court, or that do not on their face require review of a state court's decision, may be subject to *Rooker-Feldman* if those claims are closely enough related to a state-court judgment.
> …
>  Even if *Rooker-Feldman*  does not bar a claim, when there is a prior state-court judgment that appears to cover the same transaction or the same issues as the later federal case, the possibility exists that *res judicata* may apply.  In Indiana, as is commonly the case, *res judicata* is an affirmative defense.  When the earlier judgment was rendered by a state court, the Full Faith and Credit Statute, 28 U.S.C. § 1738, requires [federal] courts to give a state court judgment the same preclusive effect it would have in state court.
> …
> Indiana's Supreme Court has said that [i]n general, issue preclusion bars subsequent litigation of the same fact or issue that was necessarily adjudicated in a former suit.  Indiana courts follow federal precedents in applying issue preclusion (also commonly referred to as collateral estoppel).  The courts ask two questions: (1) whether the party in the prior action had a full and fair opportunity to litigate the issue and (2) whether it is otherwise unfair to apply collateral estoppel given the facts of the particular case.

*Mains v. Citibank, N.A.*, 852 F.3d 669, 675-76 (7th Cir. 2017) (internal citations and quotations marks omitted).  Generally, "[w]here a state court determines factual questions using the same standards as the bankruptcy court would use, collateral estoppel should be applied".  *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987).

N.     Here, the Divorce Court was squarely presented with the question of whether to modify the Divorce Decree to include Danny's obligation to pay the mortgage payments.  In the Modification Order, the Divorce Court did so.  However, the Divorce Court later changed course and, in the Vacating Order, made the specific factual findings that the mortgage payment

obligation "was not signed as a part of the parties' divorce proceedings, and was not intended as a property settlement agreement." The Divorce Court was presumably bound by the *Premarital Agreement* waiving spousal support, which left the Divorce Court to determine the amount of child support to be provided. The Divorce Court awarded child support of $125/week in the Divorce Decree and appears to have not modified that award when confronted with Danny's agreement to pay the parties' mortgage payment as memorialized in the Contract. Accordingly, this Court sees no intent on the part of the Divorce Court to consider Danny's agreement to pay mortgage payments "in the nature of support".

O. While the Divorce Court did not, and indeed could not, directly address the later-arising federal questions of whether the Debt is a DSO pursuant to § 101(14A) that is nondischargeable pursuant to § 523(a)(5), the Divorce Court's rulings are so closely related to characterization of the Debt that this Court considers the Divorce Court's conclusion dispositive of the issue.

P. Nor is there evidence that the Plenary Court intended to impose an obligation "in the nature of support" where the Divorce Court chose not to. Rosemary filed the Contract Action two months after the Divorce Court entered the Vacating Order. The trial transcript of the Contract Action shows that the parties litigated it as a breach of contract action. The Plenary Court did not make explicit any desire to impose a support obligation with its entry of Judgment.[31] The Judgment, a single sentence awarding monetary damages, is merely a liquidated breach of contract remedy with no bearing on the determination of whether the Debt is a nondischargeable DSO.

---

[31] It does not appear that Rosemary asked for such relief, and it is not clear that the Plenary Court could have granted such relief as it, too, may have been precluded from making such a determination by the Divorce Court's prior decision on that issue.

Q. The intent of the parties with respect to the nature of Danny's agreement to pay the parties' mortgage can also be gleaned from the Contract Action. Rosemary did not bring the Contract Action on behalf of the parties' child. The parties' child was not mentioned at trial. Instead, the parties testified about how the proceeds of a mortgage loan were spent and the circumstances of the Contract's formation, none of which leads this Court to conclude that Danny's payment of the parties' mortgage was intended as support for the parties' child.

R. The Court concludes that neither the parties (at the time they entered into the Contract), the Divorce Court nor the Plenary Court intended Danny's agreement to pay the parties' mortgage to be "in the nature of support", and the Divorce Court's explicit determination that the Contract was outside the scope of the Divorce Action is dispositive. Therefore, the Debt is not a DSO as defined in § 101(14A) and is not excepted from discharge pursuant to § 523(a)(5).

*Judicial Estoppel*

S. Even if the Court concluded otherwise about the dischargeability of the Debt, Rosemary's enforcement of the Debt is barred by the doctrine of judicial estoppel, which the Court raises of its own accord. "[J]udicial estoppel 'is an equitable doctrine invoked by a court at its discretion' ". *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 1815 (2001) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).

T. Judicial estoppel as applied in bankruptcy cases means "a debtor who receives a discharge by concealing the existence of a chose in action cannot wait until the bankruptcy ends and then pursue the claim." *Williams v. Hainje*, 375 F. App'x 625, 627 (7th Cir. 2010) (citing *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir.2006)). "[A] debtor who receives even preliminary benefits from concealing a chose in action from his creditors can still be estopped from pursuing the suit in the future." *Id*.

U.    Under the doctrine of judicial estoppel "a litigant who convinces a court to accept his or her position cannot in later proceedings repudiate that position and advance an inconsistent one. … It should not be used where it would work an injustice, such as where the former position was the product of inadvertence or mistake." *Stocks v. DoAll Co.*, 340 F.Supp.3d 789, 791 (E.D. Wis. 2018) (citing *In re Cassidy*, 892 F.2d 637, 642 (7th Cir. 1990)). "[The] issue of whether a post-bankruptcy debtor knew of the undisclosed pre-bankruptcy claims usually is central to the judicial estoppel determination." *Canen v. U.S. Bank Nat'l Ass'n*, 913 F.Supp.2d 657, 665 (N.D. Ind. 2012), aff'd as modified, 556 F. App'x 490 (7th Cir. 2014).

V.    In determining whether Rosemary's nondisclosure was the result of "inadvertence or mistake," the Court may consider the timing of her actions, the extent of her involvement with the undisclosed claim, and the availability of counsel. *See, e.g., Hainje*, 375 F. App'x at 628; *Canen*, 913 F. Supp. 2d at 665-666; *Stocks*, 340 F. Supp. 3d at 792. Furthermore, the Court notes that there are neither "inflexible prerequisites [n]or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire v. Maine*, 532 U.S. at 751, 121 S.Ct. at 1815.

W.    Rosemary did not schedule the Judgment as an asset in either Rosemary's 2011 Case or Rosemary's 2017 Case. The Court is satisfied by evidence in the record that Rosemary's two failures to disclose the Judgment were not the result of inadvertence or mistake. Rosemary knew about the requirement to disclose pending litigation claims as evidenced by her scheduling a personal injury suit in Rosemary's 2017 Case. Rosemary had not forgotten about the Judgment when she filed her schedules as evidenced by her seeking to enforce and collect the Judgment in the Contract Action before, during, and after each of her bankruptcies, including by twice writing

to the Plenary Court on her own initiative. Even if Rosemary were to allege that her failure to disclose the Judgment was due to reliance on poor legal advice, it would not affect the outcome. *Cannon-Stokes*, 453 F.3d at 449 (dismissing the argument that reliance on counsel is a defense to judicial estoppel for undisclosed claims in bankruptcy).

## *Decision*

Based on the foregoing, the Court concludes that the Debt is not excepted from the Discharge pursuant to § 523(a)(5) and that enforcement of the Debt is barred by judicial estoppel.

The Court will enter judgment in favor of Danny and against Rosemary on the Complaint and the Counterclaim consistent with these findings of fact and conclusions of law contemporaneously herewith.

### # # #